# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| LISA CARLSON, | : | CIVIL ACTION |
| | : | |
| *Plaintiff,* | : | |
| v. | : | |
| | : | NO. 2:22-CV-00125 |
| QUALTEK WIRELESS, LLC, | : | |
| | : | JURY TRIAL DEMANDED |
| *Defendant.* | : | |
| | : | |

**DEFENDANT, QUALTEK WIRELESS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES PURSUANT TO FED. R. CIV. P. 54(D)**

**FOX ROTHSCHILD LLP**

COLIN D. DOUGHERTY
ERIKA M. PAGE
980 Jolly Road
Suite 110
Blue Bell, PA 19422-3001
Telephone: (610) 397-6500
Fax: (610) 397-0450
cdougherty@foxrothschild.com
epage@foxrothschild.com

*Attorneys for Defendant*

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BASES FOR QW'S FEE PETITION......................................................... 2

III. ARGUMENT .................................................................................................................... 4

    A. QW is Entitled to Costs Pursuant to Fed. R. Civ. P. 54(d)(1). ............................... 4

    B. QW is Entitled to Reasonable Attorneys' Fees Pursuant to Fed. R. Civ. P. 52(d)(2) ................................................................................................................... 5

        1. QW is Entitled to Attorneys' Fees because Plaintiff's Title VII Retaliation Claim was Frivolous, Unreasonable, and Without Foundation. ................................................................................................ 5

        2. Awarding QW $181,113.00 in Attorneys' Fees is Reasonable. .................. 8

IV. CONCLUSION................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barnes Foundation v. Twp. of Lower Merion*,
  242 F.3d 151 (3d Cir. 2001) ................................................................................................ 3, 5

*Christainburg Garment Co. v. E.E.O.C.*,
  434 U.S. 412 (1977) ................................................................................................................ 5

*CRST Van Expedited, Inc. v. EEOC*,
  578 U.S. 419 (2016) ............................................................................................................ 3, 5

*EEOC v. CRST Van Expedited Inc.*,
  944 F.3d 750 (2019) .............................................................................................................. 10

*Fox v. Vice*,
  563 U.S. 826 (2011) ........................................................................................................ 10, 11

*Gilmore v. Macy's Retail Holdings, Inc.*,
  385 F. App'x 233 (3d Cir. 2010) ............................................................................................. 4

*Griffin v. St. Clair Cty., Ill.*,
  No. 3:17-cv-01169, 2019 WL 3738626 (S.D. Ill. Aug. 8, 2019) ............................................. 7

*Hensley v. Exkerhart*,
  461 U.S. 424 (1983) .......................................................................................................... 8, 10

*Lacy v. Gen. Elec. Co.*,
  558 F. Supp. 277 (E.D. Pa. 1982) (Bechtle, J.) ....................................................................... 5

*Leffler v. Meer*,
  936 F.2d 981 (7th Cir. 1991) ................................................................................................... 7

*Middlebrooks v. Teva Pharms. USA, Inc.*,
  No. 17-412, 2019 WL 936645 (E.D. Pa. Feb. 26, 2019) ................................................ passim

*Quiroga v. Hasbro, Inc.*,
  934 F.2d 497 (3d Cir. 1991) ............................................................................................ 5, 7, 8

*Stinebaugh v. Eldorado Stone, LLC*,
  No. 4:06-cv-2210, 2008 WL 11500376 (M.D. Pa. Apr. 4, 2008) ................................. 6, 7, 8, 9

*Taylor v. People Sales & Profit Co.*,
  No. 4:18-cv-232, 2019 WL 6878862 (M.D. Ga. Dec. 17, 2019) ............................................. 8

*United States v. Eleven Vehicles, Their Equip. & Accessories*,
  200 F.3d 203 (3d Cir. 2000) .................................................................................................... 8

*Washington v. Phila. Cty. Ct. of Com. Pl.*,
    89 F.3d 1031 (3d Cir. 1996)..................................................................................................9

**Statutes**

Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* ............................................. *passim*

Equal Pay Act, 29 U.S.C. § 206(d)(1) ..................................................................................... *passim*

Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S.A. §§ 260.1, *et seq.* ............. *passim*

**Other Authorities**

CLS, Range of Hourly Rates, Effective July 1, 2018, https://clsphila.org/about-
    cls/attorney-fees (last visited Aug. 23, 2022) ...........................................................................11

U.S. Bureau of Labor Statistics, Consumer prices up 8.5 percent for year ended
    March 2022, https://www.bls.gov/opub/ted/2022/consumer-prices-up-8-5-
    percent-for-year-ended-
    march2022.htm#:~:text=The%20Consumer%20Price%20Index%20increased,
    month%20advance%20since%20December%201981.&text=Line%20chart%2
    0with%20507%20data%20points (last visited Aug. 23, 2022) .............................................11

Fed. R. Civ. P. 54(d) ............................................................................................................ *passim*

Defendant, Qualtek Wireless, LLC ("QW" or "Defendant"), by and through its undersigned counsel, hereby submits this Memorandum of Law in Support of its Motion for Costs and Attorneys' Fees Pursuant to Fed. R. Civ. P. 54(d).

## I.  INTRODUCTION

Despite being fully aware of her former employer, Defendant, Qualtek Wireless, LLC's ("QW") bonus policies and company-wide restructuring, and being unqualified for a promotion, Plaintiff Lisa Carlson ("Plaintiff") nonetheless forced QW to defend her frivolous claims, alleging in pertinent part that QW failed to remit her "entire" bonus amount and promote her to a Director-level position and that QW terminated her employment because she made gender-related complaints. Because Plaintiff's allegations had no evidentiary basis, this Court granted QW's Motion for Summary Judgment, entering judgment in favor of QW and against Plaintiff.

It is well-settled that QW, as the prevailing party, is entitled to the costs it incurred in defending Plaintiff's action pursuant to Federal Rule of Civil Procedure 54(d)(1). (*See* Counsel's Declaration, attached hereto as **Exhibit "1"**, ¶ 4, indicating that counsel incurred costs totaling $4,308.02). Furthermore, as this Court pointed out in its comprehensive Opinion, Plaintiff's allegations are based upon nothing more than her own perceptions of QW's management and her subjective beliefs about how QW should have been run. Accordingly, and for the reasons that follow, Plaintiff is also entitled to attorneys' fees of at least $181,113.00 pursuant to Title VII and Federal Rule of Civil Procedure 54(d)(2). See **Exhibit "1"**, ¶ 5.[1] QW's legal bills demonstrate a

---

[1] QW's counsel tried unsuccessfully to discuss the issue of attorneys' fees and costs with Plaintiff's counsel, via both phone and email. (*See* a true and correct copy of Defense Counsel's August 21, 2022 Email, attached hereto as **Exhibit "2"**).

reasonable number of hours worked at market rates for their attorneys to successfully defend Plaintiff's meritless litigation.[2]

## II.   FACTUAL BASES FOR QW'S FEE PETITION

As a general matter, Plaintiff's continued, haphazard prosecution of her meritless claims and the Court's entry of judgment in favor of QW in the entirety (ECF No. 50) provide the bases for QW's request for costs and attorneys' fees. On January 11, 2022, Plaintiff, a Minnesota resident, filed the present action against QW after exhausting her administrative remedies with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 27-2 at 7). Plaintiff's operative Amended Complaint, filed on March 27, 2012, alleged, in pertinent part, retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206(d)(1) (the "Equal Pay Act" or the "EPA") and a violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S.A. §§ 260.1, *et seq.* (the "PWPCL"). *Id.* Each of these allegations stems from the fact that QW did not pay Plaintiff the maximum potential bonus allowed under the company-wide ***discretionary*** bonus program (and, allegedly paid males within her department a greater percentage of their potential bonuses), or promote her, rather than two, ***objectively more qualified*** male employees, to a higher-level position; and because QW reassigned Plaintiff different job responsibilities due to a company-wide restructuring and the elimination of her position before ultimately terminating her in January 2020. *Id.*

---

[2] While QW's attorneys' fees total $189,107.50, *see* **Exhibit "1"**, ¶ 5, QW is only seeking $181,113.00, as prevailing defendants are permitted to recover attorneys' fees under Title VII but not under the Equal Pay Act ("EPA") or the Pennsylvania Wage Payment and Collection Law ("PWPCL"). Accordingly, in calculating its reasonable attorneys' fees, QW omitted the costs associated with defending Plaintiff's EPA and PWPCL claims, as well as Plaintiff's previously-filed claim alleging that QW violated the Minnesota Human Rights Act, which was since dismissed. *See* **Exhibit "A"** to **Exhibit "1"**, at 7, 34, 35, 52, 55, 56, 57, 61. QW further omitted various research and correspondence to the EEOC, detailing alleged violations not at issue within Plaintiff's action before this Court. *See* **Exhibit "A"** to **Exhibit "1"**, at 19, 22, 25.

Initial discovery confirmed that Plaintiff had neither a factual nor legal basis to assert any of her claims. *See* ECF No. 49. First, it was undisputed from the offer letters Plaintiff signed that any bonuses she received were to be discretionary. *Id.* at 2–4. Moreover, Qualtek's longstanding policies established that, in order to be promoted to the Director position Plaintiff sought, Plaintiff would need to work from Qualtek's Montgomery County, Pennsylvania headquarters, something she refused to do because she had recently purchased a home in Minnesota. *Id.* at 7–8. Finally, emails produced at the beginning of the discovery period established that, at the time of Plaintiff's termination, Qualtek was undergoing a company-wide restructuring, affecting multiple other Qualtek employees. *Id.* at 10–11, 18.[3]

On July 12, 2022, QW filed a Motion for Summary Judgment. (ECF No. 27). Oral argument was held on August 3, 2022. (ECF No. 46). Just one week letter, on August 10, 2022 the Court issued a comprehensive Opinion and accompanying Order, granting QW's Motion for Summary Judgment in its entirety. (ECF Nos. 49 and 50).[4] While the Court was "not convinced" that Plaintiff had even satisfied her initial burden of proving a *prima facie* case for retaliation under Title VII, it concentrated its analysis on the issue of pretext, finding that Plaintiff had "fail[ed] to adduce evidence of pretext to proceed to trial . . . ." (ECF No. 49 at 12). Specifically, Plaintiff failed to offer any "***evidentiary basis***" that QW's decision not to promote her to a Pennsylvania Director position, and Qualtek's decision to terminate her employment following its company-

---

[3] While Plaintiff was the only person mentioned within the email who was terminated, she was also the only Finance Manager. This is consistent with the fact that Plaintiff's Finance Manager position was, indeed, eliminated, as Qualtek had repeatedly indicated.

[4] Because attorneys' fees cannot be awarded to prevailing defendants under the Pennsylvania Wage Payment and Collection Law or the Equal Pay Act, but can be awarded under Title VII, *see CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 422 (2016); *Barnes Foundation v. Twp. of Lower Merion*, 242 F.3d 151, 158 (3d Cir. 2001), QW will dedicate the majority of its analysis to Plaintiff's groundless litigation of her Title VII claim.

wide restructuring and the elimination of her position were in any way pretextual. *See id.* at 14–19 (emphasis added). Furthermore, Plaintiff "offer[ed] no [evidence of any] protected activity before [her] 2018 bonus decision"; and "offer[ed] no evidence that [her] 2019 bonus decision [was] causally connected to protected conduct." *Id.* at 20–22. Rather, Plaintiff made multiple "bald argu[ments]" and contentions "wholly out of undisclosed source[s]." *Id.* at 18–19. Put simply, in prosecuting her case, Plaintiff only "present[ed] jury arguments hoping to invoke sympathy loosely based on unrelated facts and her [own] views as to how Qualtek should be managed." *Id.* at 24–25.[5]

### III. ARGUMENT

#### A. QW is Entitled to Costs Pursuant to Fed. R. Civ. P. 54(d)(1).

It is well-settled that "costs should be allowed to a prevailing party" in Title VII actions. *Gilmore v. Macy's Retail Holdings, Inc.*, 385 F. App'x 233, 240 (3d Cir. 2010) (citing Fed. R. Civ. P. 54(d)(1)) (affirming costs to prevailing employer in Title VII action). Accordingly, this Court should award QW $4,308.02, the costs incurred in performing legal research, taking Plaintiff's deposition, and defending the depositions of Elizabeth Downey, David Conn, Shawn Kemmerer, Stefanie Trybula, and Lauren Petzar, the five QW representatives Plaintiff sought to depose. *See* **Exhibit "1"**. In light of the fact that it was Plaintiff's counsel who sought these five depositions and QW obtained a judgment before proceeding to trial, awarding QW $4,308.02 in costs is more than reasonable. *See Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-412, 2019 WL 936645, at

---

[5] In so holding, the Court further noted Plaintiff's numerous failures to comply with the Court's Policies and Procedures. *See* ECF No. 49 at 25 n. 1. Plaintiff's non-compliance, requiring QW (and the Court) to not only sift through multiple, uncited exhibits but also attempt to decipher Plaintiff's ever shifting claims, resulted in additional, unnecessary labor and expense. *See* **Exhibit "1"**, ¶ 5 (citing examples of "Plaintiff's counsel's dilatory discovery practices, ever-changing allegations, and repeated inability to follow the Court's Policies and Procedures").

*21 (E.D. Pa. Feb. 26, 2019) (Kearney, J.)(award of $51,445.73 in costs (and $403,947.27 in attorneys' fees) was reasonable where plaintiff was considered prevailing party at trial).

      **B.**      **QW is Entitled to Reasonable Attorneys' Fees Pursuant to Fed. R. Civ. P. 52(d)(2)**

            **1.**      **QW is Entitled to Attorneys' Fees because Plaintiff's Title VII Retaliation Claim was Frivolous, Unreasonable, and Without Foundation.**

The Supreme Court has long held that "a district court may in its discretion award attorney's fees to a prevailing [employer] in a Title VII case" where, as here, "the plaintiff's action was frivolous, unreasonable, or without foundation[.]" *Lacy v. Gen. Elec. Co.*, 558 F. Supp. 277, 278–79 (E.D. Pa. 1982) (Bechtle, J.) (quoting *Christainburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421 (1977)); *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 423 (2016). While attorneys' fees should not be assessed against a plaintiff simply because she lost her case, "it is not necessary that the prevailing defendant prove that the plaintiff had subjective bad faith in bringing the action in order to recover attorneys' fees. Rather, the relevant standard is objective." *Barnes Foundation v. Twp. of Lower Merion*, 242 F.3d 151, 158 (3d Cir. 2001) (citations omitted).

Courts look to the following factors in assessing whether a plaintiff's claim could be considered frivolous, unreasonable, or without foundation such that attorneys' fees should be awarded to the prevailing defendant: "whether the plaintiff established a *prima facie* case, the defendant offered to settle, the trial court dismissed the case prior to trial[,] or the case continued until a trial on the merits." *Id.* "These considerations, however, are merely guidelines, not strict rules[.]" *Id.* Suits are considered to "without foundation" when they are "meritless" or "groundless." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 503 (3d Cir. 1991).

Applying these considerations, courts within this Circuit have found it appropriate to award attorneys' fees to employers in Title VII cases where, as this Court explained in its extensive

5

summary judgment opinion, plaintiffs/employees' claims have been found to be ***without any evidentiary basis.*** For instance, the Middle District of Pennsylvania awarded attorneys' fees to the defendant/employer in *Stinebaugh* after granting its motion for summary judgment on the plaintiffs' Title VII and Pennsylvania Human Relations Act ("PHRA") claims. *Stinebaugh v. Eldorado Stone, LLC*, No. 4:06-cv-2210, 2008 WL 11500376, at *2 (M.D. Pa. Apr. 4, 2008). Discovery had revealed that the plaintiffs had been terminated for a legitimate, non-discriminatory reason (because the factory they had worked at ceased production). *Id.* While the plaintiffs "knew, or should have known," at that point "that their claims could not succeed and should have discontinued their litigation[,]" they nonetheless continued discovery and conducted multiple, additional depositions. *Id.* "Undeterred by the [continued] lack of support for their claims, the plaintiffs continued to press [them] in opposing [their former employer's] motions for summary judgment[,]" disputing facts plainly established within the record and offering a "scattershot assortment of reasons why [the record evidence from their former employer] should not be believed." *Id.* In deciding to award the defendant/employer attorneys' fees, the court reasoned:

> Despite that the factual and legal bases for their claims were – admittedly – lacking, the plaintiffs continued to press their claims through summary judgment. [The defendant/employer] is entitled to attorneys fees because the plaintiffs continued to litigate their claims after it became clear that they were groundless. Further, the fact that the plaintiffs continued to conduct extensive discovery and strenuously litigate this action despite the early acknowledgment of the insufficiency of their claims, suggests a level of harassment and vexatiousness which also supports an award of attorneys fees. Simply put, the plaintiffs knew, or should have known, before summary judgment that their claims were without foundation[.]

*Id.* at *3 (internal citations and quotation marks omitted).

The court further noted:

> Several other factors also support attorneys fees being assessed against the plaintiffs. . . . The plaintiffs' claims were dismissed prior to trial, and involved no difficult questions of unsettled law, but rather well-established Title VII standards, which the plaintiffs clearly could not meet. Further, prior to the institution of the

6

<pre>          action, the EEOC dismissed the plaintiffs' claims, providing the plaintiffs with an
          indication that their claims were, at the very least, suspect.</pre>

*Id.* (internal citations and quotation marks omitted); *see also Quiroga*, 934 F.2d at 503 (affirming award of attorneys' fees in favor of defendant/employer where the trial court found "not only that [the plaintiff's] claims were utterly without basis in law or in fact but that" the plaintiff and his attorney attempted "to force plaintiff's various grievances into the framework of various state and federal causes of action"); *Leffler v. Meer*, 936 F.2d 981, 987 (7th Cir. 1991) ("A plaintiff may be assessed his opponent's attorneys' fees if he proceeds in the face of factual developments which arise during the course of litigation that would render the suit frivolous."); *Griffin v. St. Clair Cty., Ill.*, No. 3:17-cv-01169, 2019 WL 3738626, at *1 (S.D. Ill. Aug. 8, 2019) (awarding attorneys' fees to defendant/employer who prevailed on summary judgment where, as here, the plaintiff/employee continued to allege age discrimination and race discrimination in violation of Title VII, "even though the undisputed facts showed that the [employer] instead fired [plaintiff] because of his unsatisfactory job performance").

As indicated *supra*, Plaintiff was well-aware when she filed this action (and long before discovery even began) that any bonus she received was discretionary; she was unqualified for the Director position; and QW's company-wide restructuring resulted in the elimination of her position. Therefore, she did not have a claim for retaliation under Title VII. However, like the plaintiffs in *Stinebaugh*, she continued to vigorously prosecute her case, taking the depositions of five Qualtek employees and opposing QW's Motion for Summary Judgment, all the while using "scattershot" evidence wholly unsupported by the record to question QW's credibility. While Plaintiff's ever-changing allegations cannot be categorized as stating any cognizable violation, she, like the employee in *Quiroga*, needlessly attempted to categorize them as such. Finally, as in *Stinebaugh*, Plaintiff's case was fully decided at the summary judgment stage and did not involve

unsettled questions of law, and the EEOC did not find that QW had committed any of the violations Plaintiff had alleged.

Accordingly, QW is entitled to an award of its attorneys' fees.

### 2. Awarding QW $181,113.00 in Attorneys' Fees is Reasonable.

This Court has indicated that, under the "lodestar" formula, a reasonable attorneys' fee is presumed to be "the number of hours reasonably expended on the litigation" multiplied "by a reasonable hourly rate." *Middlebrooks*, 2019 WL 936645, at *4 (citing *Hensley v. Exkerhart*, 461 U.S. 424, 433 (1983), and others). QW, "as the party seeking attorney's fees, has the burden to prove that [its] request is reasonable by submitting the hours worked and rates claimed." *Id.* (internal citations and quotation marks omitted). "[T]he party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Id.* (internal citations and quotation marks omitted). Courts have "have a positive and affirmative function in the fee fixing process, not merely a passive role" and "[i]n calculating the hours reasonably expended, [courts] should review the time charged, decide whether the hours set out were reasonably expended for each of particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Id.* (internal citations and quotation marks omitted).

"In calculating the lodestar, [courts] must **not** award less in fees than requested unless the opposing party makes **specific objections** to the fee request." *Id.* (quoting *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 211–12 (3d Cir. 2000)) (emphasis added); *Stinebaugh* 2008 WL 11500376, at *4 (noting same in context of defendant who, like QW here, prevailed on a motion for summary judgment); *Taylor v. People Sales & Profit Co.*, No. 4:18-cv-232, 2019 WL 6878862, at *2 (M.D. Ga. Dec. 17, 2019) (awarding defendant, as prevailing party

on motion for summary judgment, its requested attorneys' fees where the "[p]laintiff did not respond to [d]efendant's motion [for fees] or offer any reason for a reduction to the lodestar").

This Court has further noted that "[t]ime entries must be specific enough to allow the district court to determine if the hours claims are unreasonable for the work performed." *Middlebrooks*, 2019 WL 936645, at *5 (internal citations and quotation marks omitted). The Third Circuit has defined the requisite degree of specificity as follows:

> [S] some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates. However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.

*Washington v. Phila. Cty. Ct. of Com. Pl.*, 89 F.3d 1031, 1037–38 (3d Cir. 1996) (internal citations and quotation marks omitted). This Court further elaborated:

> Time entries such as miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses are sufficiently specific. Our Court of Appeals found entries such as attention to papers and attention to status without indicating what papers or status to which the attorney attended, and entries such as e-mails, conference call, correspondence and review papers are insufficient to determine if the hours claimed are unreasonable for the work performed.
>
> We are permitted to award time for block billing – the practice of recording multiple tasks in one, non-itemized entry – so long as there is a reasonable correlation between the various activities listed in the block and the time spent completing those tasks.

*Middlebrooks*, 2019 WL 936645, at *5 (internal citations and quotation marks omitted); *see*, *e.g.*, *id.* at **9–10 (overruling defendant's objections to block-billed time entries and internal conferencing calls with descriptions, even though not all of the attorneys involved specifically provided sworn declarations describing their time, when plaintiffs provided billing records); *Stinebaugh* 2008 WL 11500376, at *4 (noting that hours and tasks performed by defense counsel

9

for defendants prevailing on summary judgment motion were "well documented . . . through declarations from the attorneys and detailed pro forma").

In calculating reasonable rates, this Court has explained:

> [The party seeking fees] carries the burden to produce satisfactory evidence in addition to the attorney's own affidavits that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A reasonable hourly rate is generally calculated according to the prevailing market rates in the relevant community and our starting point is the attorney's usual billing rate. However, the attorney's usual billing rate is not dispositive. When determining the prevailing market rate, we are directed by our Court of Appeals to assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

*Middlebrooks*, 2019 WL 936645, at *10.

It should be further noted that "frivolous claims may increase the cost of defending a suit in ways that are not reflected in the number of hours billed." *Fox v. Vice*, 563 U.S. 826, 838 (2011). While a party may not prevail upon all of its claims (or in this case, a defendant may not be eligible for attorneys' fees with respect to all of a plaintiff's claims), "[t]he Supreme Court holds [that a party's] degree of success is 'the most critical factor' in determining an appropriate attorney's fee award." *Middlebrooks*, 2019 WL 936645, at *15 (quoting *Hensley*, 461 U.S. at 434, 435). Where, as here, a plaintiff's case involves a common core of facts, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis[,]" and such a "lawsuit cannot be viewed as a series of discrete claims." *Id.* at **15–16. Accordingly, district courts have the discretion to approximate fees as they deem reasonable. *See id.* (applying these principles to reduce plaintiff's attorneys' fees by only 4% where the plaintiff did not prevail on all of his interrelated claims); *EEOC v. CRST Van Expedited Inc.*, 944 F.3d 750, 759–60 (holding, on remand from Supreme Court, that district court did not abuse

10

its discretion in determining attorneys' fees incurred by employer on frivolous claims where district court subtracted approximate fees relating to claims which were considered non-frivolous).

Applying these principles, awarding QW $$181,113.00 in attorneys' fees is fair and reasonable. Each billing entry submitted by each of QW's billing professionals sufficiently describes the activity he or she performed on behalf of QW by detailing specific facts, evidence, and witnesses pursuant to this Court's decision in *Middlebrooks*. *See* **Exhibit "1"**, ¶ 2; **Exhibit "A"** to **Exhibit "1"**. Furthermore, each billing professional's rate is consistent with market rates and the billing professionals' rates in other matters; and represents the amounts QW agreed to pay QW for successfully defending each of Plaintiff's claims under *Middlebrooks*. *See* **Exhibit "1"**, ¶ 7; **Exhibit "A"** to **Exhibit "1"**.[6] Each of Plaintiff's employment claims (Title VII, EPA, and PWPCL) also involved a common core of facts, and defense counsel omitted from their present Motion any fees specifically relating to Plaintiff's EPA and PWPCL claims, as well as certain correspondence with the EEOC related to Plaintiff's claims. *See* **Exhibit "1"**, ¶ 5; *Middlebrooks*, 2019 WL 936645, at **15–16. Finally, as the Supreme Court recognized in *Fox*, Plaintiff's

---

[6] This Court in *Middlebrooks* further considered the rates set by Community Legal Services ("CLS") as a "baseline for reasonableness" in determining appropriate attorneys' fees. *See Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-412, 2019 WL 936645, at *13. While the CLS standard fees are slightly lower than the fees charged by defense counsel here, the CLS standard fees have been in effect since July 1, 2018, over four years ago, and do not account for the rapid rate of inflation occurring over the past year. *See* CLS, Range of Hourly Rates, Effective July 1, 2018, https://clsphila.org/about-cls/attorney-fees (last visited Aug. 23, 2022) (noting that the rates are "based on Philadelphia law firm market survey data and increases in the Consumer Price Index"); U.S. Bureau of Labor Statistics, Consumer prices up 8.5 percent for year ended March 2022, https://www.bls.gov/opub/ted/2022/consumer-prices-up-8-5-percent-for-year-ended-march2022.htm#:~:text=The%20Consumer%20Price%20Index%20increased,month%20advance%20since%20December%201981.&text=Line%20chart%20with%20507%20data%20points (last visited Aug. 23, 2022) ("The Consumer Price Index increased 8.5 percent for the year ended March 2022, following a rise of 7.9 percent from February 2021 to February 2022. The 8.5-percent increase in March was the largest 12-month advance since December 1981."). This Court has looked to factors such as inflation in determining the reasonableness of attorneys' fees. *See, e.g., Middlebrooks*, 2019 WL 936645, at *13.

frivolous litigation (as well as the additional abuses Plaintiff's counsel committed, detailed *supra*) plainly added to the fees QW incurred as a result of counsel's successful defense of Plaintiff's litigation. *See* **Exhibit "1"**, ¶ 5.

### IV.    CONCLUSION

For each of the foregoing reasons, Defendant, Qualtek Wireless, LLC, respectfully requests that this Court award it costs pursuant to Fed. R. Civ. P. 54(d)(1) and attorneys' fees pursuant to Fed. R. Civ. P. 54(d)(2).

Respectfully submitted:

**FOX ROTHSCHILD LLP**

Dated: August 24, 2022              By:   /s/ Colin D. Dougherty
                                                COLIN D. DOUGHERTY
                                                ERIKA M. PAGE
                                                980 Jolly Road
                                                Suite 110
                                                Blue Bell, PA 19422-3001
                                                Telephone: (610) 397-6500
                                                Fax: (610) 397-0450
                                                cdougherty@foxrothschild.com

                                                *Attorneys for Defendant*