**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LISA CARLSON** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  22-125** |
| | : | |
| **QUALTEK WIRELESS LLC** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                **September 8, 2022**

Lisa Carlson believed her former employer Qualtek Wireless fired her in January 2020 because she complained about gender bias and unequal pay. She sued Qualtek for retaliation under Title VII and the Equal Pay Act and for failing to pay her a full bonus under the Pennsylvania Wage Payment and Collection Law. Qualtek moved to dismiss the complaint but then did not move to dismiss Ms. Carlson's amended complaint. The parties engaged in fulsome discovery, and we twice granted Ms. Carlson's uncontested motions for additional time to complete her discovery. Qualtek, like many employers in retaliation and wage claims, then moved for summary judgment. The parties provided substantial record cites for our study. We decided to hold oral argument to address our several questions. Our continued study following over an hour of oral argument required we enter summary judgment in Qualtek's favor. Qualtek now moves for costs and fees as the prevailing party under the fee-shifting provisions in Title VII. We must find the action is frivolous, unreasonable, or without foundation to award fees to the prevailing employer. We cannot find Ms. Carlson's claims meet this standard; her claims as pleaded and litigated appeared to have merit until we learned of undisputed facts adduced in discovery and explained during oral argument required we enter summary judgment. Ms. Carlson never retreated on her retaliation claims and is now appealing our Order granting summary judgment. We deny Qualtek's motion for an award of attorney's fees and costs.

I.      **Background**[1]

Ms. Carlson began working for Qualtek in November 2017 after it acquired her employer Velocitel. Ms. Carlson lived and worked in Minnesota for Qualtek headquartered in this District. Ms. Carlson expected to be promoted into a director position when her supervisor left Qualtek in March 2018 based on the recommendation of Velocitel's former Chief Financial Officer. Qualtek did not promote Ms. Carlson to the director position and instead offered her a manager position with an annual base salary increased to $105,000 and an annual potential bonus eligibility of $20,000.

Qualtek gave Ms. Carlson a positive performance review, increased her salary, and awarded her a $5,000 bonus in December 2018 paid in two installments in December 2018 and June 2019. Ms. Carlson believed Qualtek made an error in her 2018 bonus and believed Qualtek should pay her up to the full potential bonus of $20,000 prorated for 2018. Ms. Carlson contacted Qualtek's payroll manager to complain about the amount of her bonus. She also complained about her bonus to her supervisor, Director of Finance Shawn Kemmerer. Director Kemmerer raised Ms. Carlson's concerns about her bonus to Qualtek's Vice President of Finance and its Vice President of Human Resources. There is no record evidence tying her complaints regarding her bonus to gender bias. Ms. Carlson believed Qualtek, through its Vice Presidents of Finance and Human Resources, acknowledged an error in Qualtek's payroll system regarding her bonus for 2018 and agreed to correct the problem. Qualtek did not pay Ms. Carlson bonus for 2018 other than the $5,000 bonus awarded in December 2018.

Ms. Carlson continued to believe she should be promoted into a director of finance position. Qualtek promoted Bruce Neff, a male with a bachelor's degree and located in Pennsylvania near Qualtek's headquarters, in April 2019 to a director position. Qualtek also hired

another man, Brandon Ebeling, to an open director of finance position in October 2019. Mr. Ebeling held a bachelor's degree in finance and master's degree in accounting and resided in Pennsylvania near Qualtek's headquarters. Ms. Carlson did not have a bachelor's degree and continued to live in Minnesota.

Ms. Carlson complained to Qualtek's Human Resources in mid-October 2019 about gender discrimination after Qualtek promoted Messrs. Neff and Ebeling to director positions. Qualtek's Director of Human Resources scheduled a meeting with Ms. Carlson and the Vice President of Human Resources to address Ms. Carlson's r concerns. Ms. Carlson ultimately cancelled the meeting fearing "retaliation" by the Vice President of Human Resources.

Ms. Carlson then applied for another open director position in November 2019 even though the position required her presence in Qualtek's Pennsylvania office. Ms. Carlson recently purchased a home in Minnesota and did not intend to leave but hoped she could perform the duties of a director from Minnesota, believing she had essentially performed the work of a director since March 2018 working from Minnesota. Qualtek's Human Resources Director told Ms. Carlson the position required her to be in the Pennsylvania office and Ms. Carlson remained unwilling to move.

In January 2020, Qualtek increased Ms. Carlson's salary and awarded her a bonus of $2,875 for 2019. Ms. Carlson complained to Qualtek's payroll manager and Human Resources Director about the 2019 bonus, believing Qualtek erred in calculating both her 2018 and 2019 bonuses. Ms. Carlson also complained about bonus disparities between her and male employees by emailing Qualtek's Director and Vice President of Human Resources after being copied on an email of another female employee who complained about gender-based bonus disparities. Ms. Carlson "echoed" the concerns of the other female employee regarding gender-based bonus discrepancies. Qualtek's Vice President of Human Resources responded to Ms. Carlson advising

bonuses are discretionary and Qualtek paid the 2019 bonuses at a reduced amount based on its overall performance. Ms. Carlson believed Qualtek's reasons for the bonus discrepancy is a pretext for gender-based discrimination and its reasons for awarding her a reduced bonus for 2018 and 2019 cannot be believed because Qualtek did not produce corporate financial documents to support lower-than-expected targets for 2019.

Qualtek restructured its finance team and reassigned Ms. Carlson to a new financial reporting role in January 2020.  Qualtek then terminated Ms. Carlson employment a few days later and shortly after Ms. Carlson's complaints to Qualtek about gender-based bonus discrepancies. Ms. Carlson filed a charge of discrimination with the Equal Employment Opportunity Commission alleging discrimination based on sex, retaliation, and a violation of the Equal Pay Act. She then sued Qualtek, later amending her complaint, alleging retaliation for opposing gender-based discrimination in violation of Title VII, discrimination and retaliation claims in violation of the Equal Pay Act, and a Pennsylvania Wage Payment and Collection Law claim seeking payment of her bonuses for 2018 and 2019.

Qualtek moved for summary judgment on all claims. We studied the record and asked for oral argument on Qualtek's motion to address our questions. We focused our questions to counsel during the hour-plus oral argument on Title VII and Equal Pay Act retaliation and particularly on whether Qualtek's articulated non-retaliatory reason for its bonus awards is pretext. Qualtek conceded at oral argument this is a pretext case. Ms. Carlson at oral argument withdrew her claim of an Equal Pay Act violation and limited her Pennsylvania Wage Payment and Collection Law claim, leaving only her Title VII and Equal Pay Act retaliation claims and a Pennsylvania Wage Payment and Collection Law claim only for her 2018 bonus.  We then again considered the parties' arguments and the record before us. We concluded Ms. Carlson failed to adduce evidence of

4

pretext to proceed to trial on her Title VII and Equal Pay Act retaliation claims and Pennsylvania Wage Payment and Collection Law claim. We entered judgment in Qualtek's favor.

## II.   Analysis

Qualtek now moves for its attorney's fees and costs as the prevailing party on Ms. Carlson's retaliation claims under Title VII.[2] It seeks $181,113 in attorney's fees and $4,308.02 in costs it claims to have paid in defending Ms. Carlson's claims Qualtek retaliated against her by failing to pay her full bonus, failing to promote her, and terminating her after she complained in October 2019 about Mr. Neff's promotion to a director position and in January 2020 about gender-based bonus discrepancies.  We deny Qualtek's motion.

### A.   We sparingly grant fees to employers succeeding on a summary judgment record developed after discovery in  Title VII case.

Congress in Title VII included a fee-shifting provision. It provides a "prevailing party" in a Title VII case may, in the court's discretion, be awarded reasonable attorney's fees and costs.[3] The prevailing party may be either the plaintiff or the defendant "but the standard for awarding attorney's fees to prevailing defendants is more stringent than that for awarding fees to prevailing plaintiffs."[4]

A prevailing plaintiff typically "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."[5] An award of attorney's fees to a prevailing plaintiff in a Title VII action serves two purposes: it vindicates Congressional policy in civil rights actions "considered of the highest priority" and it penalizes "a violator of federal law."[6]

We do not face the same policy concerns when the employer succeeds. Our Court of Appeals recognizes the interests in an award of attorney's fees to a prevailing plaintiff "are wholly absent" when the employer is the prevailing party.[7] When an employer- defendant is the prevailing party in a Title VII action, the Supreme Court directs "a plaintiff should not be assessed [her]

opponent's attorney's fees unless a court finds that [her] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."[8] The prevailing employer-defendant need not show "subjective bad faith" by plaintiff in bringing the claims.[9]

In determining whether in our discretion to award attorney's fees to a prevailing defendant, we are directed not to engage in "*post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, [her] action must have been unreasonable and without foundation" because "[t]his kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success."[10] This focus is mindful of the reality "the course of litigation is rarely predictable" and "[d]ecisive facts may not emerge until discovery."[11] "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."[12] In short, Congressional concern with the "vigorous enforcement"[13] of Title VII and the potential chilling effect on Title VII plaintiffs, counsels against *post hoc* reasoning in the determination of whether to award attorney's fees to prevailing defendants.[14]

We are directed by our Court of Appeals to consider several guideposts informing our determination of frivolity: whether Ms. Carlson established a *prima facie* case, whether Qualtek offered to settle, whether the case is dismissed before trial or continued on the merits,[15] and whether the question at issue is one of first impression requiring judicial resolution, whether the controversy is based sufficiently on a real threat of injury to the plaintiff, whether the trial court made a finding of frivolity under *Christiansburg*, and whether the record supports such a finding.[16]

**B.     Ms. Carlson's Title VII retaliation claims are not frivolous, unreasonable, or groundless.**

Qualtek asserts it is entitled to attorney's fees because Ms. Carlson's Title VII retaliation claims are frivolous, unreasonable, and without foundation. It argues Ms. Carlson knew the

discretionary nature of any bonus award; Messrs. Neff and Ebeling, promoted or hired into director positions, both held bachelors' degrees and worked from Qualtek's King of Prussia headquarters; and discovery revealed Qualtek implemented a company-wide restructuring affecting other Qualtek employees at the time of her termination. Qualtek also points to our memorandum granting it summary judgment where we concluded Ms. Carlson failed to adduce evidence of pretext to proceed to trial on her Title VII retaliation claims.

Qualtek relies on a few cases where a district court awarded attorney's fees to a prevailing defendant, but primarily relies on *Stinebaugh v. Eldorado Stone, LLC*[17] and *Quiroga v. Hasbro, Inc.*[18] These cases are distinguishable on their facts.

In *Stinebaugh*, three employees sued their former employer alleging reverse discrimination based on race and national origin under Title VII. The three white and non-Hispanic employees advanced a theory their employer, under the guise of closing a plant where they worked, terminated them and replaced them with Hispanic workers. During the employees' depositions, each acknowledged their employer closed the plant and no one worked there.[19] The employer argued the employees' continued litigation, after they admitted at depositions the employer's plant closed, became frivolous, unreasonable, and without foundation entitling the employer to attorney's fees.

Judge Jones agreed with the employer. Judge Jones reasoned while the employees at the outset of the case "may have had some basis, however flimsy, to pursue the theory that [employer] did not actually intend to close the [plant], but rather singled them out to be replaced by Hispanic workers. However, once it became clear to the [employees] that [employer] had entirely ceased production at the [plant] and that the work they had done there was no longer being performed by anybody, the foundation for their claims crumbled."[20] Judge Jones found the employees' deposition testimony admitting their former employer closed the plant is "tantamount to an

admission" the employer's proffered reason for their termination – the plant's closure – is a legitimate, non-discriminatory reason and the employees then knew, or should have known, their claims could not have succeeded and should have discontinued their litigation.[21] The employees instead continued their litigation in search of another theory for their case, continued discovery including an additional sixteen depositions, and opposed summary judgment offering "scattershot" reasons why the plant's closure resulting in their termination should not be believed.[22]

Judge Jones granted the employer's motion for summary judgment and, later, the employer's motion for fees and costs as the prevailing party, finding the employees' continued litigation of their claims "after it became clear that they were groundless" entitled the employer to an award of attorney's fees.[23] Judge Jones also found the continuation of extensive discovery even after acknowledging the insufficiency of the claims "suggests a level of harassment and vexatiousness which also supports an award of attorney's fees."[24]

In *Quiroga*, Judge Debevoise found Title VII employment discrimination claims frivolous, unreasonable, and "utterly without basis in law or in fact" and awarded attorney's fees to a prevailing defendant employer.[25] Applying *Christiansburg's* standard, Judge Debevoise found the employee's claims lacked foundation, including a finding the Title VII retaliatory discharge claim based on national origin "appears to have been an attorney construct" and the claims entirely "baseless," should not have been brought, and a preliminary investigation by the employee and his attorney would have shown the claim to be without basis in law or fact. Our Court of Appeals affirmed Judge Debevoise's findings to justify the award of fees to the employer.[26]

Judge Jones's analysis in *Stinebaugh* and Judge Debevoise's analysis in *Quiroga* are plainly distinguishable from Mrs. Carlson's claim. We do not have here, as in *Stinebaugh*, a clear admission by the plaintiff employees of the factual basis of the employer's legitimate, non-

discriminatory reason for their termination. We disagree with Qualtek's argument Ms. Carlson's retaliation claim is frivolous because she knew the discretionary nature of Qualtek's bonus program. The record showed Ms. Carlson, Mr. Neff, and Mr. Ebeling all participated in a discretionary bonus program but this does not mean Qualtek could not, as a matter of fact or law, violate Title VII in exercising its discretion. The parties here contested whether Qualtek retaliated against Ms. Carlson for her complaints about gender-based disparities in bonuses, among other complaints. If the bonus program did not exist at all or had been discontinued, we could see how this case could be analogized to *Stinebaugh*. And although Ms. Carlson did not have a bachelors' degree or live in Pennsylvania, Qualtek recognized her performance by giving her raises and promotions all while allowing her to work in Minnesota. These are not  the same facts as in *Stinebaugh*.

We also do not agree *Quinoga* is analogous. Judge Debevoise found the employee's claims "utterly without basis in law or in fact," including a finding one claim appeared to have been made up by the employee's attorney. We made no such finding here and, in fact, there is nothing in the record suggesting such a drastic finding.

We also recall Qualtek's counsel at oral argument representing the parties' dispute comes down to pretext: are Qualtek's articulated legitimate, non-retaliatory reasons for the less than full potential bonuses awarded to Ms. Carlson, Qualtek's failure to promote her to a director position, and her later termination a pretext for retaliation in violation of Title VII? And did Ms. Carlson meet her burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Qualtek's proffered non-retaliatory reasons to allow a reasonable factfinder to rationally find them "unworthy of credence"?[27]   After extensive oral

argument and review of the record, we found Ms. Carlson did not meet her burden to adduce evidence of pretext to proceed to trial.

There are legion of decisions–monthly, if not weekly—from our colleagues in this District and our Court of Appeals determining pretext at the summary judgment stage by evaluating record evidence for genuine issues of material fact. Many plaintiff employees do not meet their burden. But we do not then penalize these plaintiff employees by awarding attorney's fees to the defendant employer. As Judge Brody astutely observed, the decision to award attorney's fees in employment discrimination cases "could lead to a chilling effect on future civil rights plaintiffs, a result that would contravene Congress' intent in enacting the very civil rights statutes at issue here" and "[b]ased on the legislative history and case law surrounding these statutes, it is unlikely that Congress either envisioned or desired that plaintiffs in civil rights or Title VII actions might be subject to a sanction greater than that imposed in those lawsuits where Congress had not provided for fee-shifting."[28]   Ms. Carlson's claim is not an outlier.  We have no basis to find her claims frivolous, unreasonable, or without foundation.

## III.   Conclusion

An award of attorney's fees to a prevailing employer in a Title VII retaliation claim are "sparingly awarded" and only where we find an employee's claims frivolous, unreasonable, or without foundation. We make no such finding here. We deny Qualtek's motion for attorney's fees and costs.

---

[1] We overview the facts as context for Qualtek's motion. We provide a more fulsome factual recitation based on the record in our August 10, 2022 memorandum granting Qualtek's Motion for summary judgment. *See* ECF Doc. No. 49. Ms. Carlson appealed from our August 10, 2022 Order granting Qualtek's motion for summary judgment. ECF Doc. No. 53.  Nothing in today's denial of fees should be interpreted as suggesting we are now questioning our reasoning in granting

summary judgment. We today face a much different standard. Ms. Carlson did not adduce evidence sufficient to proceed to trial resulting in summary judgment. But there is no basis to find she filed a frivolous, unreasonable, or groundless lawsuit or continued the lawsuit after learning of case dispositive facts.

[2] Qualtek concedes it is not permitted to recover attorney's fees under the Equal Pay Act or the Pennsylvania Wage Payment and Collection Law and omitted costs and fees associated with defending those claims. *See* ECF Doc. No. 52–2 at 2, n. 2.

[3] 42 U.S.C. § 2000e–5(k). The section provides: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

[4] *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 157–58, and n. 6 (3d Cir. 2001) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) and *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 750–51 (3d Cir. 1997)).

[5] *L.B. Foster Co.*, 123 F.3d at 750 (quoting *Christiansburg*, 434 U.S. at 416–17). Our Court of Appeals has long recognized the teaching of *Christiansburg*: "In *Christiansburg*, the Court recognized that while a liberal fees standard should be used for those pasties whose suits Congress wished to encourage, and who needed this encouragement to bring suits, a stricter standard was appropriated for defendants, who needed no encouragement to defend suits against them and who were not vindicating an important public policy." *Dorn's Transp., Inc. v. Teamsters Pension Trust Fund of Phila. and Vicinity*, 799 F.2d 45, 49 (3d Cir. 1986).

[6] *L.B. Foster Co.*, 123 F.3d at 750–51 (quoting *Christiansburg*, 434 U.S. at 418).

[7] *Id.* at 751.

[8] *Christiansburg*, 434 U.S. at 422.

[9] *Barnes Found.*, 242 F.3d at 158.

[10] *Christiansburg*, 434 U.S. at 421–22.

[11] *Id.* at 422.

[12] *Id.*

[13] *L.B. Foster Co.,* 123 F.3d at 751 (quoting *Christiansburg,* 434 U.S. at 422).

[14] *Solomen v. Redwood Advisory Co.*, 223 F. Supp. 2d 681, 687–88 (E.D. Pa. 2002).

[15] *L.B. Foster Co.*, 123 F.3d at 751.

[16] *Barnes Found.*, 242 F.3d at 158 (citation omitted).

[17] No. 06-2210, 2008 WL 11500376 (M.D. Pa. Apr. 10, 2008).

[18] 934 F.2d 497 (3d Cir. 1991).

[19] *Stinebaugh*, 2008 WL 11500376 at *2.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at *3 (citing *Christiansburg*, 434 U.S. at 422).

[24] *Id.*

[25] *Quiroga*, 934 F.2d at 501–02.

[26] *Id.* at 503.

[27] *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

[28] *Solomen*, 223 F. Supp. 2d at 688 (citing *Christiansburg*, 434 U.S. at 419–20).